THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:06CR335 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM OPINION AND ORDER ADDRESSING DEFENDANT'S MOTION TO SUPPRESS |
| ROMAN JACKLIN, | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

Defendant Roman Jacklin has filed this motion to suppress evidence for failure to give a *Miranda* warning. All parties agree that Mr. Jacklin was in custody and that he was interrogated and is alleged to have made incriminating statements. According to Mr. Jacklin, the only fact in dispute is whether or not the government has proved by a preponderance of the evidence that a *Miranda* warning was in fact administered to Mr. Jacklin prior to the interrogation. The Court finds that the *Miranda* warnings were properly given to Mr. Jacklin, and that his waiver of those rights was knowing, intelligent, and voluntary, and hereby denies Mr. Jacklin's motion to supress his statement.

## I. RELEVANT FACTS

On May 2, 2006, members of the Identity Theft Task Force were conducting surveillance at the Davis County Courthouse for the purpose of locating and arresting Defendant, Roman Jacklin. They had received information about several mail collection box break-ins, and Mr. Jacklin was named as someone who was involved in these break-ins. When Mr. Jacklin left the

courthouse and entered his vehicle, he was handcuffed and told that he was being arrested based on a probation violation.

Jared Bingham and Steven Humphrey, members of the task force, both testified at the September 14, 2006 motion to suppress hearing, that Bingham advised Mr. Jacklin of his rights by reading them verbatim from a card he carries in his credential case. Both men testified that Mr. Jacklin waived his *Miranda* rights. When Bingham asked Mr. Jacklin if he understood his rights, he nodded his head and said, "Yes." Then Bingham asked Mr. Jacklin if he wanted to answer questions, and Mr. Jacklin stated that he did. Bingham did not have Mr. Jacklin sign a waiver of *Miranda* rights form because he did not want to unhandcuff Mr. Jacklin to have him sign the form when the same could be accomplished by a verbal advisement. Later Jacklin was unhandcuffed to sign a *Consent to Search Form*. The agents said they unhandcuffed him at that time because as they sat on the curb with him, he was cooperative and calm, and did not appear to be a threat.

Mr. Jacklin stated that he was involved in the break-ins, and he gave Bingham information about other individuals who were involved. During the conversation, neither Bingham nor Humphrey took any action toward Mr. Jacklin to get him to talk. The entire conversation lasted no longer than 15 minutes.

Mr. Jacklin testified at the hearing that on the date of his arrest he was under the influence of cocaine and methamphetamine. He testified that he has no recollection of receiving a *Miranda* warning during the incident. On cross-examination at the September 14, 2006 hearing, Mr. Jacklin stated that he knows his *Miranda* rights because he has been arrested before, and he knows that if he wanted an attorney he could have asked for an attorney. He testified that he is

2

familiar with the criminal system. On May 2, 2006, when he was with the officers in the parking lot he did not once ask for an attorney.

## II. ANALYSIS

Mr. Jacklin argues that the government has failed to prove by a preponderance of evidence that a *Miranda* warning was in fact administered to Mr. Jacklin prior to the interrogation. The only support presented for this argument is that Agent Humphrey testified that the *Miranda* warning was given while standing next to the car immediately after Mr. Jacklin was handcuffed, while Agent Bingham testified that the warning was given while the officers were sitting on the curb with Mr. Jacklin. Mr. Jacklin argues that the discrepancies in the testimony of the officers undermines the claims of the government that a *Miranda* warning was in fact given.

The Court finds that the minor discrepancies in the testimony of the officers are not significant enough to undermine the government's assertion that the warning was given. The officers testified that the conversation with Mr. Jacklin lasted only about fifteen minutes, meaning that the officers' testimony as to when the *Miranda* warning was given differed by only a few minutes at most. Mr. Jacklin admitted at the hearing that he is familiar with the criminal justice system, and that he knows what *Miranda* is, including knowing that he has the right to have an attorney present, and that he did not have to talk to the agents. Finally, Mr. Jacklin signed the consent to search form, which contained a detailed explanation as to why officers wanted to search the vehicle–namely that it contained items related to stolen mail. This relates back to the reason the officers wanted to contact Mr. Jacklin and to his subsequent waiver of his *Miranda* rights. Mr. Jacklin has provided the Court no evidence showing that he did not receive *Miranda* warnings.

In assessing a defendant's comprehension and voluntariness, the Court looks at the "totality of the circumstances surrounding the interrogation." *Fare v. Michael C.*, 442 U.S. 70 (1979). In making this determination, the Court considers the "particular facts and circumstances surrounding the waiver, including background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369 (1979). An "explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the *Miranda* case." *Butler*, 441 U.S. at 375. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. *Id.* At 373. "[W]aiver can be inferred from the actions and words of the person interrogated." *Id.* At 374.

After examining the totality of circumstances surrounding the interrogation in this case, the Court finds that Mr. Jacklin received a valid *Miranda* warning and voluntarily, intelligently and knowingly waived the same.

### III. CONCLUSION

For the foregoing reasons, Mr. Jacklin's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

DATED this 25th day of October, 2006.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT